Copies mailed by chambers 8-29-18
Please note on the docket

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
FORTUNATO K. FEBUS,
           Plaintiff,

v.

CCS CORRECT CARE SOLUTIONS, DR.
SORRELL FELDMAN, COUNTY OF
ORANGE, and SERGEANT HERNANDEZ,
           Defendants.
----------------------------------------------------------------x

**OPINION AND ORDER**

17 CV 3408 (VB)

Briccetti, J.:

    Plaintiff Fortunato K. Febus, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983 alleging defendants CCS Correct Care Solutions ("Correct Care"), Dr. Sorrell Feldman, the County of Orange (the "County"), and Sergeant Hernandez violated his constitutional rights during his incarceration at the Orange County Jail (the "Jail").

    Now pending are two motions to dismiss the second amended complaint ("SAC") pursuant to Rule 12(b)(6), filed separately by Correct Care, Dr. Feldman, and the County (collectively, the "County defendants"), and Sgt. Hernandez. (Docs. ##41, 52).

    For the reasons set forth below, the County defendants' motion is GRANTED IN PART and DENIED IN PART, and Sgt. Hernandez's motion is GRANTED.

    The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

1

**BACKGROUND**

For the purpose of deciding the pending motions, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in plaintiff's favor, as set forth below.[1]

At all times relevant to the SAC, plaintiff was an inmate at the Jail.

On July 3, 2016, plaintiff was arrested in Connecticut. According to plaintiff, he was injured during the course of his arrest and hospitalized for four days as a result of his injuries.

Plaintiff alleges that when he arrived at the Jail on July 19, 2016, he told the intake nurse about his injuries, which included compound broken ribs, a hernia, neck and head injuries, a concussion, "torn sho[u]lders," and torn knee tissue. (Compl. at 3). Nevertheless, plaintiff did not see a doctor until "the third trimester of August." (SAC at 7). That doctor ordered plaintiff a second mattress. However, defendant Sgt. Hernandez refused to provide plaintiff a second mattress, citing "security issues." (Id.).

On September 24, 2016, defendant Dr. Feldman examined plaintiff and referred him to the Orange County Regional Hospital (the "Hospital"). At the Hospital, another doctor examined plaintiff, ordered plaintiff a second mattress, and gave him a "breathing device." (SAC at 7). Upon plaintiff's return to the Jail, Sgt. Hernandez again refused to provide him a second mattress. In addition, plaintiff's breathing device was taken from him without explanation. Plaintiff does not allege who took his breathing device.

---

[1] In addition to the SAC, the Court has reviewed and considered plaintiff's complaint (Doc. #2), amended complaint (Doc. #35), and affidavits in opposition to defendants' motions to dismiss. (Docs. ##48, 49, 61).

On October 27, 2016, after a follow up appointment, Dr. Feldman again referred plaintiff to the Hospital. The examining doctor allegedly informed plaintiff that he requested plaintiff receive hernia repair surgery. However, plaintiff later learned surgery was not requested.

Over the next several days, plaintiff spoke to several correction officers, including Sgt. Hernandez, regarding his desire to be assigned housing on a lower floor of the Jail. According to plaintiff, he was ignored.

On December 19, 2016, plaintiff again went to the Hospital. He complained of dizziness, and told the examining doctor his hernia made it difficult to walk. The doctor allegedly ascribed plaintiff's dizziness to vertigo, saying it was "nothing," and ordered an ultrasound. (SAC at 8). The ultrasound did not take place.

On January 13, 2017, plaintiff returned to the Hospital. According to plaintiff, his hernia was "like a hard big ball" and could not "be push[ed] in to place." (Compl. at 5). He had difficulty walking without pain. The examining doctor told plaintiff other doctors did not want plaintiff at the Hospital because patients who were not incarcerated might be scared by him. When he returned to the Jail, plaintiff requested a grievance form, but was ignored.

Plaintiff alleges his hernia grew and his pain worsened throughout February 2017, such that he was barely able to walk. On February 27, 2017, Dr. Feldman examined plaintiff. Dr. Feldman noted plaintiff's hernia growth and said he would refer plaintiff to the Hospital for consultation with a surgeon. Plaintiff requested reassignment to housing on a lower floor of the Jail, but Dr. Feldman did not recommend it. In addition, plaintiff requested his medical record, but did not receive it.

On March 24, 2017, plaintiff used the button in his cell to call for help. When a correction officer responded, plaintiff requested medication for his pain and dizziness. The

responding officer allegedly told plaintiff it was too late, and he would have to wait until the following day to receive medication.

On April 15, 2017, plaintiff saw Dr. Feldman. Dr. Feldman allegedly told plaintiff his headaches resulted from "the police at the café in Connecticut repeatedly bash[ing] his head on the ground." (SAC at 9). Dr. Feldman denied plaintiff's request for a CAT scan or MRI. Dr. Feldman told plaintiff he had submitted a request for plaintiff's hernia repair surgery, but the request was denied.

On May 3, 2017, plaintiff stumbled while holding a cup of scalding water. Plaintiff fell, allegedly spilling water on his face and neck, and was knocked unconscious. According to plaintiff, security footage shows him lying unattended for more than an hour. When plaintiff awoke, he was surrounded by correction officers, who stood observing him until Dr. Feldman arrived and ordered an ambulance to transport plaintiff to the Hospital.

The examining doctor in the emergency room noted the injuries from plaintiff's July 3, 2016, arrest, and ordered a CAT scan. The examining doctor informed plaintiff his hernia was "not life-threatening," but said he would order consultation with a surgeon for an elective hernia repair procedure.

On May 8, 2017, plaintiff requested his medical records, and Dr. Feldman again denied plaintiff's request. In addition, Dr. Feldman allegedly said he would not approve plaintiff's hernia surgery, because plaintiff would be leaving the Jail "any day." (SAC at 10).

Further, plaintiff alleges that throughout his incarceration at the Jail he developed a rash, ringworm, dry skin, and mental stress, but was only prescribed cortisone and skin cream for these ailments.

Plaintiff was transferred to Altona Correctional Facility in July 2017, and received hernia repair surgery on September 19, 2017.

## DISCUSSION

I.  Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation and citation omitted). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II.     Plaintiff's Eighth Amendment Claim

Defendants argue plaintiff fails to state an Eighth Amendment claim against Dr. Feldman or Sgt. Hernandez for deliberate indifference to plaintiff's serious medical needs.

With respect to Sgt. Hernandez, the Court agrees; however, with respect to Dr. Feldman, the Court disagrees.

To assert a claim for constitutionally inadequate medical care under the Eighth Amendment's ban against cruel and unusual punishment, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has both an objective and a subjective component: plaintiff must plead facts showing (i) the alleged deprivation of medical care is "sufficiently serious," and (ii) the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective component has two subparts. "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required. Salahuddin v. Goord, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 839–40 (1970)). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin v. Goord, 467 F.3d at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

6

In cases challenging the adequacy of the medical treatment that was given, "the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" Salahuddin v. Goord, 467 F.3d at 280 (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)).

The subjective component requires alleging that defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. Salahuddin v. Goord, 467 F.3d at 280. "[T]he charged official must act with a sufficiently culpable state of mind." Id. (citing Wilson v. Seiter, 501 U.S. 294, 300 (1991)). It is well established that "negligence, even if it constitutes medical malpractice, does not, without more," give rise to a constitutional claim. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

With respect to the first prong, plaintiff does not allege defendants failed to provide any medical treatment; instead, he challenges the adequacy of treatment provided. Thus, the Court focuses on "the particular risk of harm faced by [plaintiff] due to the challenged deprivation of care, rather than the severity of [his] underlying medical condition, considered in the abstract." Smith v. Carpenter, 316 F.3d at 186. When the plaintiff ultimately receives the treatment sought, the Court considers the "harm that resulted from the delay" in treatment. Graham v. Wright, 2004 WL 1794503, at *5 n.7 (S.D.N.Y. Aug. 10, 2004), aff'd, 136 F. App'x 418 (2d Cir. 2005) (summary order).[2]

---

[2] Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Here, plaintiff alleges he saw numerous doctors over the course of seven months. On October 27, 2016, April 15, 2017, and May 3, 2017, plaintiff was informed by doctors, including Dr. Feldman, that they would request or recommend hernia repair surgery. According to plaintiff, his hernia worsened between October 2016 and May 2017, eventually becoming so painful he had difficulty walking. Nevertheless, plaintiff did not receive hernia repair surgery until after he was transferred to Altona Correctional Facility. Thus, plaintiff plausibly alleges a sufficiently serious medical need.[3]

With respect to the second prong, at this early stage of the litigation, plaintiff's allegations are sufficient to state a claim against Dr. Feldman. Plaintiff alleges Dr. Feldman was aware of plaintiff's hernia because Dr. Feldman had five appointments with plaintiff and regularly referred plaintiff to outside medical providers at the Hospital. Moreover, according to plaintiff, Dr. Feldman knew he was in pain, and his pain was worsening. Finally, plaintiff alleges at an appointment on May 8, 2017, Dr. Feldman told plaintiff he would not approve plaintiff's hernia repair surgery, because he would be leaving the Jail "any day." (SAC at 10).

If by May 8, 2017, plaintiff's surgery had become medically necessary, plaintiff's "'allegations support the claim that it was deliberate indifference towards [Plaintiff's] medical needs, rather than an exercise of professional judgment' to decide that Plaintiff could wait to be transferred or released for his surgery." Kucharczyk v. Westchester Cty., 95 F. Supp. 3d 529, 542 (S.D.N.Y. 2015) (quoting Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974)). Thus, accepting plaintiff's allegations as true, and drawing all inferences in his favor, which it must,

---

[3] Plaintiff alleges he suffered from numerous other ailments, including vertigo, dry skin, rashes, ringworm, and mental stress. Plaintiff's conclusory allegations regarding these ailments are insufficient to satisfy the objective component of the deliberate indifference inquiry.

8

the Court concludes plaintiff plausibly alleges a deliberate indifference claim against Dr. Feldman.

However, with respect to Sgt. Hernandez, plaintiff's allegations fall short. According to plaintiff, Sgt. Hernandez denied plaintiff's requests for a second mattress citing security concerns. There is no indication Sgt. Hernandez knew the absence of a second mattress posed a substantial risk of harm to plaintiff's health. Even liberally construing plaintiff's submissions, the Court finds no allegation which suggests Sgt. Hernandez acted with a sufficiently culpable state of mind.[4]

Accordingly, plaintiff's deliberate indifference claim will proceed as to Dr. Feldman, but is dismissed as to Sgt. Hernandez.

III.     Conditions of Confinement

Sgt. Hernandez argues plaintiff fails to state a conditions of confinement claim.

---

[4]    It is not clear whether plaintiff was a pretrial detainee or a post-conviction detainee during his incarceration at the Jail. (Compare SAC at 2, with County Defs. Br. at 8 n.1; Hernandez Br. at 4 n.5). The Court would expect defense counsel, who practice frequently before this Court and have access to such information, to assist the Court by stating clearly what plaintiff's detention status was, but counsel failed to do so. However, because plaintiff indicated in the SAC that he was a convicted and sentenced prisoner, the Court applies the Eighth Amendment standard applicable to deliberate indifference claims brought by post-conviction detainees.

In any event, because plaintiff's allegations are sufficient to state a claim against Dr. Feldman under the more stringent Eighth Amendment standard, they also would be sufficient to state a claim under the more lenient Fourteenth Amendment standard applicable to pretrial detainees. Conversely, even under the more lenient Fourteenth Amendment standard, plaintiff's allegations are insufficient to state a claim against Sgt. Hernandez, because there is no allegation Sgt. Hernandez "acted intentionally . . . or recklessly failed to act with reasonable care to mitigate the risk . . . even though [he] knew, or should have known," of the risk of harm. Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017).

Should this case proceed to summary judgment or trial, the Court expects defense counsel will resolve this question with certainty.

The Court agrees.

A liberal reading of the SAC suggests plaintiff intended to plead a conditions of confinement claim with respect to Sgt. Hernandez's denial of plaintiff's request for a second mattress.

To state a conditions of confinement claim, plaintiff must plausibly allege "(1) an objectively, sufficiently serious . . . denial of the minimal civilized measure of life's necessities and (2) a sufficiently culpable state of mind on the part of the responsible official." Willey v. Kirkpatrick, 801 F.3d 51, 66 (2d Cir. 2015) (internal quotations omitted).

To meet this standard with respect to the denial of a specialized mattress, "a plaintiff must plead: (1) he had a medical condition requiring a non-standard bed to protect against serious damage to his future health; (2) he made his condition known to the prison officials; (3) he requested a non-standard bed to accommodate the condition; and (4) his request was denied by an official who knew of and disregarded an excessive risk to the plaintiff's health or safety." Santiago v. Ponte, 2016 WL 4051861, at *3 (S.D.N.Y. July 26, 2016).

Here, plaintiff alleges Sgt. Hernandez denied plaintiff's request for a second mattress in July and September 2016. However, plaintiff fails to allege Sgt. Hernandez knew plaintiff's requests were to accommodate a medical condition, or knew of and disregarded an excessive risk to plaintiff's health when he denied plaintiff's requests.

Accordingly, plaintiff's conditions of confinement claim is dismissed.

IV. Monell Claims

Defendants argue plaintiff's claims against the County and Correct Care must be dismissed because plaintiff fails to state a claim under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

The Court agrees.

Under Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. at 694. Thus, to assert a Section 1983 claim against the County or Correct Care, plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

"While Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), such claims nevertheless must meet the plausibility requirements of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 572 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009)." Guzman v. United States, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013) (quoting Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993)). "In other words, boilerplate allegations will not suffice." Id. (internal quotation

omitted). "[T]he allegations [a defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient." Missel v. Cty. of Monroe, 351 F. App'x 543, 545–46 (2d Cir. 2009) (summary order) (citing Dwares v. City of New York, 985 F.2d 94, 100–02 (2d Cir. 1993)).

Here, plaintiff alleges "facility policy, protocol and procedure—as admitted by medical staff—[is that] both inmates and detainees who have medical needs are treated on a 'priority needs basis.'" (Doc. #49: Pl. Aff. at 3). However, plaintiff fails to allege a causal connection between this alleged policy and his injury, and even a liberal reading of plaintiff's submissions does not suggest the existence of a causal connection.

Accordingly, plaintiff's Monell claims are dismissed.

**CONCLUSION**

The County defendants' motion to dismiss the SAC is DENIED with respect to plaintiff's deliberate indifference claim against Dr. Feldman, and GRANTED in all other respects.

Sgt. Hernandez's motion to dismiss the SAC is GRANTED.

Dr. Feldman's answer to the SAC is due September 11, 2018.

The Clerk is instructed to terminate the motions. (Docs. ##41, 52).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: August 28, 2018
       White Plains, NY

                        SO ORDERED:

                        _____
                        Vincent L. Briccetti
                        United States District Judge