UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
FORTUNATO K. FEBUS,                            :
                Plaintiff,               :
                                         :     **OPINION AND ORDER**
v.                                             :
                                         :     17 CV 3408 (VB)
SORRELL FELDMAN, M.D.,                         :
                Defendant.               :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Fortunato K. Febus, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, alleging defendant Sorrell Feldman, M.D. ("defendant" or "Dr. Feldman"), a doctor at Orange County Correctional Facility ("OCCF"), was deliberately indifferent to plaintiff's serious medical needs, in violation of the Fourteenth Amendment.[1]

      Before the Court is defendant's unopposed motion for summary judgment. (Docs. ##106, 111).[2]

      For the reasons set forth below, the motion is GRANTED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

      Defendant has submitted a memorandum of law, a statement of material facts pursuant to Local Civil Rule 56.1, declarations, and supporting exhibits. Together, these documents reflect the following uncontested factual background.

---

[1] Plaintiff also brought claims against several other defendants. By Opinion and Order dated August 28, 2018, the Court dismissed those claims and terminated the other defendants from this action. (Doc. #68).

[2] Plaintiff failed to oppose the motion, despite having been granted multiple extensions of time in which to do so. (See Docs. ##118, 119). By Order dated June 9, 2020, the Court deemed the motion fully submitted and unopposed. (Doc. #120).

1

On July 3, 2016, plaintiff was arrested in Stamford, Connecticut. Following his arrest, plaintiff was transported to Stamford Hospital, where he was treated for four days for abrasions to his left cheek, right elbow, and both knees, a hematoma to his forehead, and four broken left ribs. (See Doc. #108 ("Hassan Decl.") Ex. B ("Stamford Hosp. Records") at ECF 2, 4, 7, 8, 19).[3] During his stay at Stamford Hospital, plaintiff did not note any pain in his abdomen, which, to hospital staff, appeared ordinary. (Stamford Hosp. Records at ECF 2, 19).

On July 7, 2016, upon release from Stamford Hospital, plaintiff was detained at Bridgeport Correctional Facility.

On July 19, 2016, plaintiff was transferred to OCCF, and underwent an initial medical screening the following day. Plaintiff informed the nurse who conducted the screening of his rib fractures, and rated his pain at eight-out-of-ten intensity.

On July 23, 2016, plaintiff submitted a health service request, stating he had pain in his ribs, upper left side of his chest, shoulders, and in the back of his neck. (Hassan Decl. Ex. C ("OCCF Records") at ECF 41). Plaintiff further complained of trouble sleeping, ringing in his ears, and headaches. (Id.).

On July 27, 2016, Dr. Feldman examined plaintiff, gave plaintiff pain medication, and referred plaintiff to the Orange County Regional Medical Center ("OC Regional") for further evaluation of his rib injuries. That day, plaintiff was examined at OC Regional, received X-rays on his left ribs and chest, and was provided an incentive spirometer to help keep his lungs clear and active. (Hassan Decl. Ex. D ("OC Regional Records") at ECF 102–111).

On October 12, 2016, plaintiff submitted a healthcare request form, noting, for the first time, pain in his groin area. (OCCF Records at ECF 36).

---

[3] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

On October 28, 2016, Dr. Feldman examined plaintiff's groin and diagnosed plaintiff with a non-exigent reducible hernia that did not require emergency medical attention and prescribed plaintiff pain medication. (OCCF Records at ECF 11 (containing notes of findings and pain medication); see also Doc. #107 ("Fulvio Decl.") Ex. B ("Pl. Dep.") at 59) (noting Dr. Feldman's finding was that the hernia was able to be "pushed in," or, in other words, "reduced," and therefore was not an "emergency"). Notwithstanding such finding, Dr. Feldman referred plaintiff to OC Regional for an additional evaluation to determine whether plaintiff's hernia was incarcerated or obstructed. (OCCF Records at ECF 35, 94). That day, OC Regional Dr. Helsinga examined plaintiff and, like Dr. Feldman, diagnosed plaintiff with a reducible hernia. (Id. at ECF 96). According to plaintiff, Dr. Helsinga stated the hernia could be resolved with elective surgery. (Pl. Dep. at 64).

On October 31, 2016, Dr. Feldman reviewed Dr. Helsinga's findings, and noted in plaintiff's medical file: "No gross hematuria. Hernia reducible." (OCCF Records at ECF 11).

On November 11, 2016, plaintiff submitted a healthcare request, noting "severe pain in groin area due to a hernia." (OCCF Records at ECF 34). On November 15, 2016, Dr. Feldman examined plaintiff and again noted plaintiff's hernia was reducible. However, Dr. Feldman referred plaintiff for an ultrasound, to confirm there was no bleeding in plaintiff's groin, and for a surgical consultation. (Id. at ECF 4, 88).

On November 25, 2016, plaintiff underwent the ultrasound, which returned "unremarkable" results. (OCCF Records at ECF 53).

On November 30, 2016, following a conversation with Dr. Jerkins, OCCF's Regional Medical Director, Dr. Feldman noted the surgical consultation he requested for plaintiff was cancelled and subject to re-evaluation at a later time if necessary.

Following additional healthcare requests from plaintiff, Dr. Feldman examined plaintiff on December 19, 2016, and January 13, 2017, and confirmed plaintiff's hernia remained reducible. On February 18, 2017, plaintiff submitted another healthcare request, noting his hernia was very painful and difficult to reduce. On February 20, 2017, Dr. Feldman examined plaintiff and again confirmed plaintiff's hernia remained reducible.

On February 22, 2017, plaintiff filed a grievance in which he acknowledged his hernia was reducible, but disputed Dr. Feldman's determination that the condition was neither exigent nor required immediate surgery. (Pl. Dep. at 72–73). Plaintiff further noted Dr. Helsinga had informed plaintiff that the hernia could be treated through "elective operation surgery." (Id. at 75).

During his deposition, plaintiff testified that at no point did any doctor state that the hernia required an emergency operation. (Pl. Dep. at 75).

On March 14 and April 5, 2017, Dr. Feldman examined plaintiff and confirmed plaintiff's hernia remained reducible.

On May 3, 2017, while plaintiff was climbing a flight of stairs at OCCF, he fell backwards and lost consciousness. Following this fall, Dr. Feldman ordered plaintiff transported to OC Regional for an evaluation.

That day, at OC Regional, plaintiff stated the pain from his hernia made him dizzy and caused the fall. (OC Regional Records at ECF 1). Plaintiff also told OC Regional staff that he had suffered from light-headed dizziness for "quite sometime" and he "has been told that [he] suffers from] vertigo." (Id. at ECF 2). OC Regional Dr. Meigh then examined plaintiff, and confirmed plaintiff had a "left inguinal reducible hernia that is easily reducible. Soft and non-distended. There is no tenderness [in the abdomen]. No rebound, guarding, or rigidity. No

4

organomegaly.  Normal bowel sounds."  (Id. at ECF 4).  Dr. Meigh also ordered a CT scan of plaintiff's abdomen, which returned "unremarkable" results.  (Id. at ECF 7).  Plaintiff was discharged and returned to OCCF later that day, and consulted with Dr. Feldman about the OC Regional evaluation.

On May 13 and 22, 2017, plaintiff submitted additional healthcare requests, noting dizziness, headaches, difficulty walking, pain from his hernia, and additional pain in his neck, back, shoulders, and right knee.

On May 30, 2017, plaintiff was transferred from OCCF to Fishkill Correctional Facility ("Fishkill").  His hernia was examined at Fishkill, but no procedures were ordered.

Shortly thereafter, plaintiff was transferred to Altona Correctional Facility ("Altona").  On July 14, 2017, plaintiff was examined by a doctor at Altona, who confirmed plaintiff had a "reducible left inguinal hernia with minimal to moderate discomfort."  (Hassan Decl. Ex. E at ECF 3).  Altona staff scheduled plaintiff for a surgery consultation the following month.

On August 3, 2017, during the surgery consultation, elective laparoscopic hernia repair surgery was recommended.  On September 19, 2017, plaintiff underwent successful elective laparoscopic surgery at Alice Hyde Medical Center in Malone, New York, to repair his reducible hernia.

## DISCUSSION

I.   Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[4]

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

"Where, as here, a party has not opposed a motion for summary judgment, 'the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed.'" Slep-Tone Entm't Corp. v. Golf 600 Inc., 193 F. Supp. 3d 292, 295 (S.D.N.Y. 2016) (quoting Jackson v. Fed. Express, 766 F.3d 189, 194 (2d Cir. 2014)). Indeed, if a party has not opposed the motion, the Court may grant summary judgment only "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

In deciding a motion for summary judgment, the Court need consider only evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998). The burden to proffer evidence admissible pursuant to the Federal Rules of Evidence applies "equally to pro se litigants." Varughese v. Mt. Sinai Med. Ctr., 2015 WL 1499618, at *4 (S.D.N.Y. Mar. 27, 2015) (citing Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001)).[5] Accordingly, bald assertions, completely unsupported by admissible evidence, are

---

[5] Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.     Deliberate Indifference to Serious Medical Needs

Defendant argues plaintiff fails as a matter of law to establish a Fourteenth Amendment deliberate indifference to serious medical needs claim.[6]

The Court agrees.

A.      Legal Standard

To succeed on a claim of constitutionally inadequate medical care, a plaintiff must make a sufficient showing of "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

To establish a claim for deliberate indifference to serious medical needs, a plaintiff must satisfy a two-prong test comprising an objective prong and a mens rea prong.  Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).  Namely, a plaintiff must establish "the challenged conditions were sufficiently serious," and the defendant "acted with at least deliberate indifference to the challenged conditions."  Id.

For the objective prong, a pretrial detainee must establish the challenged conditions "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." Darnell v. Pineiro, 849 F.3d at 30.  "There is no static test to determine whether a deprivation is

---

[6]     Plaintiff was a pretrial detainee when he was transferred to OCCF on July 19, 2016.  On April 25, 2017, shortly before his transfer from OCCF to Fishkill, plaintiff was convicted and sentenced to two-and-a-third to seven years' imprisonment.  (Pl. Dep. at 99).  Because plaintiff's claim largely respects alleged conduct that occurred while he was pretrial detainee, the Court applies the Fourteenth Amendment standard applicable to deliberate indifference claims brought by pretrial detainees, rather than the more stringent Eighth Amendment standard that applies to claims brought by post-conviction detainees.

8

sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." Id.

In the context of medical care, two inquiries determine whether a deprivation is objectively serious. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). Because "the prison official's duty is only to provide reasonable care," prison officials are liable only if they fail "'to take reasonable measures' in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious." Salahuddin v. Goord, 467 F.3d at 280. If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. If the offending conduct is the "medical treatment given," however, "the seriousness inquiry is narrower." Id. When "the prisoner is receiving appropriate on-going treatment for his condition," and brings a "denial of medical care claim based on a temporary delay or interruption in treatment," courts look to "the severity of the temporary deprivation alleged by the prisoner," not "the severity of the prisoner's underlying medical condition." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).

To satisfy the mens rea prong, a pretrial detainee must sufficiently show defendant "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the [defendant] knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell v. Pineiro, 849 F.3d at 35. The mens rea prong "is defined objectively" and "can be violated when an official does not have subjective

9

awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." Id.

B.     Application

Here, no reasonable juror could conclude defendant deprived plaintiff of adequate medical care because the record is devoid of evidence to support a finding that defendant "recklessly failed to act with reasonable care to mitigate the risk" posed by plaintiff's non-exigent reducible hernia, and that defendant "knew, or should have known, that the condition posed an excessive risk" to plaintiff's health and safety. Darnell v. Pineiro, 849 F.3d at 35.

Indeed, in October 2016, shortly after plaintiff's first complaint of pain in his groin area, defendant examined plaintiff, diagnosed plaintiff with a reducible, non-exigent hernia, and prescribed plaintiff pain medication. Notwithstanding this diagnosis, defendant also referred plaintiff for further evaluation at OC Regional, an outside facility, where staff confirmed plaintiff's hernia was reducible and non-emergent. Then, in November 2016, defendant again examined plaintiff's hernia and confirmed it was still reducible, but nevertheless referred plaintiff for an ultrasound and surgical consultation. The ultrasound confirmed plaintiff's hernia did not require emergency attention, and although the initial surgical consultation was cancelled, defendant continued to monitor plaintiff's condition and re-examine his hernia.

Moreover, after plaintiff fell while climbing a flight of stairs at OCCF on May 3, 2017, defendant examined plaintiff and referred him for an additional evaluation at OC Regional, where staff noted plaintiff's hernia remained "easily reducible." (See OC Regional Records at ECF 4). CT scans also showed unremarkable results. Because plaintiff did not require emergency attention, he was discharged from OC Regional that same day.

Finally, at no point did any medical personnel, at OCCF or otherwise, suggest to plaintiff that his reducible hernia required emergency attention. Indeed, plaintiff's hernia warranted non-exigent <u>elective</u> surgery, which was successfully performed on September 19, 2017, more than three months after he was transferred from OCCF.[7]

Accordingly, the record is devoid of any evidence establishing a genuine issue of material fact respecting defendant's medical treatment of plaintiff at OCCF. On the contrary, the undisputed facts demonstrate defendant provided plaintiff with adequate medical care.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Docs. ##106, 111) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore <u>in forma pauperis</u> status is denied for the purpose of an appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444–45 (1962).

Dated: August 17, 2020
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[7] That plaintiff's elective surgery was performed more than three months after his transfer from OCCF on May 30, 2017, further indicates plaintiff's reducible hernia did not require emergency treatment.